129 576
f129 582

GEORGIA RAILWAY AND ELECTRIC COMPANY *v.* TOWN
OF OAKLAND CITY *et al.*

1. The general rule is that a court of equity has no jurisdiction to enjoin criminal prosecutions; and this rule is applicable to proceedings to punish for violations of municipal ordinances, which are quasi criminal in their nature. The cases in which proceedings to enforce such ordinances will be enjoined are exceptional in character.

2. Where a municipal corporation passed an ordinance requiring streetcars on a public street extending through the town to be stopped at three designated points for the reception of passengers, in addition to those where the company itself was accustomed to stop its cars for that purpose (except one), and fixing a penalty for disobedience thereof, injunction will not be granted to restrain the enforcement of the ordinance by prosecution, or to determine the question of its validity or its reasonableness or unreasonableness.

3. The case arose and was decided before the passage of the act of August 23, 1907 (Acts 1907, p. 72) enlarging the powers of the railroad commission of the State; and the present decision is made without reference to that act.

Argued April 17,—Decided November 16, 1907.

Petition for injunction. Before Judge Pendleton. Fulton superior court. January 25, 1907.

*Rosser & Brandon* and *Walter T. Colquitt,* for plaintiff.

*J. F. Golightly, M. L. Hathcock,* and *Walter McElreath,* for defendants.

LUMPKIN, J. The Georgia Railway and Electric Company operates a line of street and suburban railway which passes through the town of Oakland City, its tracks being in a public street of

the town known as the "chert road." It has been accustomed to stop its cars at certain points in the corporate limits to receive and discharge passengers. The municipal authorities passed an ordinance requiring street-cars traversing the street named to be stopped at the points already in use (except one), and also at three additional points, to receive passengers who might there seek to board such cars and signal or give notice of their intention to do so. The company filed an equitable petition, seeking to enjoin the enforcement of the ordinance by frequent arrests and trials of its employees for violating it. The petition alleged that the ordinance was void on the grounds that it was unconstitutional, that the defendant had no power under its charter to enact the ordinance, and that such ordinance was unreasonable. It was claimed that to allow such arrests and prosecutions would cause a multiplicity of cases, would interfere with the running of its cars and schedules, and disarrange the schedule established by the company. The defendant denied the invalidity or unreasonableness of the ordinance. The evidence was conflicting as to the necessity or convenience of making the stops at the fixed places. The injunction was refused, and the plaintiff excepted.

Without determining whether the ordinance complained of is valid or not, or whether it is in whole or in part unreasonable, the facts of this case are not such as to require a reversal of the judgment refusing an injunction. The general rule is that equity has no jurisdiction in criminal matters. Its jurisdiction is for the protection of property and property rights and franchises. Certain courts of law are invested with power to try persons accused of the violation of the criminal laws. The two are separate; and the general rule is that a court of equity will neither aid nor interfere with the administration of the criminal laws in the courts established by the State and invested with criminal jurisdiction. The rule has often been applied both to criminal proceedings under the State laws and quasi-criminal proceedings under municipal laws. An additional reason for it might be suggested, in respect to the State, on the ground that it might be an attempt to restrain the sovereign power in the name of which criminal proceedings are conducted. The State is not suable at all without its consent, save by another State in the Supreme Court of the United States, while municipalities have not the same immunity

from litigation. While this question as to the parties to the suit may furnish some difference, yet the principle of the general want of jurisdiction in equity to interfere with the administration of criminal laws has long been treated as applicable to the laws of the State and also to the quasi-criminal ordinances of a municipal corporation. In re Sawyer, 124 U. S. 200. Many efforts have been made to establish various exceptions to the general rule. But if exceptions have been allowed, it was only where they were held to clearly involve subjects of equitable cognizance and where equitable interference was necessary. Every arrest and prosecution is likely to work injury to the character and business of the defendant; and many crimes relate to acts affecting property. Still a court of equity can not undertake, merely on account of some possible incidental injury, to practically stop a court of competent jurisdiction from trying one accused of an offense. If it did so, a very large part of criminal prosecutions and the due enforcement of criminal laws would be stopped by defendants invoking the aid of equity, on the ground that their persons, character, business or property would be injured by permitting the prosecution to proceed, and that the law on which it is grounded is invalid, or does not apply to the defendant—in other words, that he is not guilty. See Davis *v.* American Society, 75 N. Y. 362. In England, though there has been some conflict in the decisions, it seems to be the rule that a court of chancery may enjoin a party to a suit, already pending before it, from proceeding by prosecution to try the same right which is in issue in that court. In some of the United States the rule of non-interference has been announced absolutely and as if almost without exception. Crichton *v.* Dahmer, 70 Miss. 602. That there are cases, however, which form exceptions to the rule has been recognized. In the case of In re Sawyer, 124 U. S. 200, supra, Mr. Justice Field, in his concurring opinion, said: "In many cases proceedings, criminal in their character, taken by individuals or organized bodies of men, tending, if carried out, to despoil one of his property or other rights, may be enjoined by a court of equity." The principle on which such cases usually rest is that the action sought to be enjoined is in the nature of a fraudulent use or an abuse of legal proceedings, where the rights of the applicant for injunction are clear, and the proceedings are obviously nothing but a circuitous method of depriving him of his

property or property rights, or where municipal authorities, under the pretense of seeking the good of the portion of society entrusted to their supervision, are in fact attacking the vested property rights of individuals or corporations.

It has often been sought to obtain an injunction on the general ground of multiplicity of suits, but these efforts have generally been denied. Poyer v. Village of Des Plaines, 123 Ill. 111 (5 Am. St. Rep. 494). If mere multiplicity of prosecutions alone, without other grounds for equitable interference for the protection of property or franchises, would require injunction against criminal proceedings, every person who might be prosecuted for conducting a business without a license, or for doing business on Sunday, or for violating a municipal ordinance against keeping goods on the streets, or in many other cases which might be suggested, could protect himself with an injunction, so as to continue to violate the law while the single case in equity was being tried and appealed from court to court. In some cases, where there was a clear right which was being invaded under an invalid ordinance, multiplicity of prosecutions has been considered as adding force to the plaintiff's position. In one or two of them injunction has been granted, not against proceeding altogether, but only against the excessive multiplying of cases under the ordinance. In Port of Mobile v. Louisville & Nashville R. Co., 84 Ala. 115, it was held, that where a city attempted unlawfully to destroy a franchise which had been conferred upon a railroad company, and which the municipality had no right to revoke, by means of a quasi-criminal ordinance, injunction would be granted. In the opinion Somerville, J., said: "There is no sort of pretense that it was a mere police regulation. . . The purpose of the defendant corporation is obviously to destroy the franchise which it has conferred, and the ordinance under consideration, having this effect, if executed, must be held to be void." For other authorities outside of this State on the subject, see 1 High on Injunctions (4th ed.) § 68; 2 Id. § 1244; Note to Crichton v. Dahmer, 21 L. R. A. 84, note to same case in 35 Am. St. R. 670 et seq.; 16 Am. & Eng. Enc. L. 370-372.

We now turn to the authorities in this State. In *Gault v. Wallis*, 53 *Ga.* 675, the general rule was applied in a case where a justice of the peace discharged a prisoner and issued a cost fi. fa.

against the prosecutor. It was alleged that this action was wrong-ful, and that the justice was insolvent. The rule was again an-nounced broadly in *Phillips* v. *Mayor, etc., of Stone Mountain*, 61 *Ga.* 387. There an ordinance required the doors of all retail liquor stores to be closed during the continuance of divine worship by any denomination of Christian people within the corporate limits. It was alleged that the ordinance was void and restricted the com-plainants' business; that two of the complainants had already been fined and had carried their cases to the superior court by writs of certiorari; and that it was the intention of the municipal authorities to strictly enforce the provisions of the ordinance. The injunction was denied. In *Garrison* v. *City of Atlanta*, 68 *Ga.* 64, injunction was denied to restrain the enforcement by fine or imprisonment of an ordinance prohibiting the allowing of cattle to run at large on the streets. In *Pope* v. *Mayor, etc., of Savan-nah*, 74 *Ga.* 365, shelves were built in front of a store, complain-ant claiming the right to do so. An ordinance prohibited the ob-struction of streets and sidewalks. The city threatened to have the complainant arrested and fined for every day the shelves were allowed to remain. Insolvency of the city was alleged. In-junction was denied. See also *City of Bainbridge* v. *Reynolds,* 111 *Ga.* 758. In *Salter* v. *City of Columbus*, 125 *Ga.* 96, a resident of Alabama delivered beer by wagons in Columbus. Injunction was sought to prevent frequent threatened arrests un-der an ordinance requiring a license to be obtained by dealers in the city; but it was denied. In *City of Atlanta* v. *Gate City Gas-Light Company*, 71 *Ga.* 106, somewhat broad language was used; but in the opinion it was declared, that, where it was manifest that prosecution and arrest were threatened for an alleged viola-tion of city ordinances, for the sole purpose of preventing the exercise of civil rights conferred directly by law (a State law which the city had no right to disregard), injunction was a proper remedy to prevent injury to the party menaced. This rul-ing was repeated in *Georgia Railroad and Banking Co.* v. *City of Atlanta*, 118 *Ga.* 486, where the city was enjoined from preventing the railroad company, by threatened arrest and prosecution of its employees, from fencing a strip of land forming a part of its right of way, and to which the city sought to lay claim as a street. In *Paulk* v. *Mayor, etc., of Sycamore*, 104 *Ga.* 24, an ordinance

making penal the sale or keeping for sale of liquor in the town of Sycamore was sought to be enjoined on the ground that it was void and had also been repealed, and that threatened prosecutions would harass and jeopardize the personal liberty and interfere with the enjoyment of the civil rights of the complainant, and his business, and cause irreparable damage. Injunction was denied. See also *O'Brien* v. *Harris,* 105 *Ga.* 732. The case of the *City of Atlanta* v. *Gate City Gas-Light Co.,* supra, was discussed and explained. This ruling was repeated in *Mayor, etc. of Moultrie* v. *Patterson,* 109 *Ga.* 370, where the ordinance involved was one making it penal to sell beef, pork, fish, etc., within the city limits, except in the city market. The *Gate City Gas-Light* case was again referred to as resting on the right of equity to interfere where it was evident that private property and civil rights were being invaded by means of the use of such ordinances, and that injunction was necessary in order to protect a right which was in jeopardy and which could not otherwise be fully protected. In *Hasbrouck* v. *Bondurant & McKinnon,* 127 *Ga.* 220, the facts involved do not appear from the headnotes. Two parties were involved in a controversy over the right to dig and haul sand from a sand-bank. One of them filed a petition in equity against the other; and pending the case he sought to enforce his claim by suing out, and threatening to continue to sue out, criminal warrants. This was an effort to misuse criminal process for the purpose of acquiring or establishing a property right; and was also during the pendency of the equitable proceeding to determine the right. Injunction was granted.

The rule that a court of equity will not ordinarily enjoin a criminal act, considered merely as such, but will enjoin a trespass working irreparable damage to property, although the act may also be the subject of punishment, is often invoked to authorize an injunction against a criminal prosecution. But an individual act causing irreparable damage is one thing; the prosecution of a person charged with an offense, in the courts provided for the trial of such proceeding, is a different thing.

Without reciting the evidence in the present case, a comparison of it with the principles above enunciated will show that, whether the ordinance was reasonable or not, the injunction prayed was properly denied. There was no effort to take away property or

property rights, or to destroy or substantially impair a franchise. The ordinance was a police regulation of travel in the street of a municipality. It was not shown that any irreparable injury would result; but at most a small interference with the schedules which the company desired to maintain, while the cases made against its employees proceeded to trial, when the validity of the ordinance could be tested.

*Judgment affirmed. All the Justices concur, except Holden, J., who did not preside.*